# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
FANNIE PLAIN,
                    Plaintiff,

        v.                              Civil Action 02-02549  (HHK)

AT&T, CORP., et al.,

                    Defendants.
```

## MEMORANDUM OPINION & ORDER

Fannie Plain, an African American woman, brings this action against her former employer, AT&T Corporation ("AT&T"), pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that AT&T breached its collective bargaining agreement with her union when it terminated her employment following a period of sickness disability leave and later refused to reinstate her to her prior position.  Plain also sues the Metropolitan Life Insurance Company ("MetLife"), claiming that it: (1) breached its fiduciary duty as a result of its decision to deny Plain's claim for long-term disability ("LTD") benefits; and (2) interfered with her protected rights in violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[1]  AT&T now moves for

---

[1]  Plain raised a number of additional claims in her complaint, among them discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*; and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*  Plain also alleged that AT&T had interfered with her protected rights in violation of Section 510 of ERISA.  However, these claims are no longer before the court as they were dismissed pursuant to an order docketed January 7, 2005.  *See Plain v. AT&T*, Civ. No. 02-02549 (D.D.C. Jan. 7, 2005).

judgment on the pleadings on the grounds that Plain failed to exhaust her administrative remedies and that her claims against AT&T are barred by the statute of limitations.  Similarly, MetLife moves for summary judgment on the basis that Plain's Section 510 claim is untimely and argues additionally that its denial of Plain's claim for LTD benefits was not an abuse of discretion. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that both AT&T's motion and MetLife's motion must be granted.

## I. FACTUAL BACKGROUND

Plain began working for AT&T on August 8, 1976.  During the course of her employment, she worked at various AT&T offices, most recently in its office in Huntington, New York.  On May 31, 2000, Plain became ill and was certified for sickness disability by defendant Metlife, the administrator of AT&T's employee benefit plan.  The medical certification for Plain's sickness disability leave, however, expired on August 15, 2000.  By letter dated September 22, 2000, AT&T advised Plain that her absence was no longer medically certified and that she was required either to report to work on October 2, 2000, or provide by September 22, 2000, documentation that would support any additional disability leave.  The letter advised that failure to comply would be viewed as a resignation.

On September 27, 2000, Plain provided additional documentation in support of her request for disability leave.  AT&T nevertheless terminated her employment on October 5, 2000 because Plain had neither reported to work on October 2, 2000, nor provided timely disability leave documentation.

The labor union to which Plain belongs, Communications Workers of America ("the Union"), initiated grievance procedures on October 5, 2000, against AT&T with respect to

Plain's termination.  AT&T denied the grievance on May 25, 2001.  Plain appealed the adverse

ruling on June 1, 2001, but because the Union did not select an arbitrator by the deadline set forth

in AT&T's collective bargaining agreement, the claim was effectively denied.

In a separate proceeding, Plain appealed the denial of sickness disability benefits.  Second

Am. Compl. ¶ 10.  On June 12, 2001, AT&T's Benefit Claim and Appeal Committee reversed

AT&T's previous decision and approved the payment of sickness disability benefits to Plain for

the period of August 15, 2000 to May 23, 2001, thereby providing Plain with fifty-two weeks of

sickness disability benefits, the maximum amount permitted by AT&T's sickness disability

policy.  As part of this decision, the Committee modified the date of Plain's termination from

October 5, 2000 to May 23, 2001.

On June 13, 2001, shortly after the Committee elected to grant Plain's sickness disability

benefits claim, MetLife notified Plain that if she wished to receive LTD benefits, she would need

to make a separate request.  Plain was also informed that in order for her application to be

considered timely, it needed to be filed within ninety days of the expiration of her sickness

disability benefits.  Plain submitted her application for LTD benefits on January 5, 2002.  On

April 1, 2002, MetLife denied Plain's LTD claim because Plain had failed to comply with the

ninety-day deadline for filing such claims and because the medical documentation submitted in

connection with Plain's application failed to demonstrate that she was disabled as defined by the

plan.  Plain appealed MetLife's determination on May 10, 2002, and that appeal was denied on

June 28, 2002.

According to Plain, from the latter part of June 2001 through September 2002, she made

several requests, orally and in writing, to be reinstated to her position at AT&T based on the

favorable sickness disability decision.  Although Plain "sought the Union's assistance in pursuing her reinstatement due to the favorable appeal decision," Second Am. Compl. ¶ 14, neither Plain nor the Union initiated a separate grievance concerning her reinstatement.

On September 18, 2002, AT&T informed Plain that pursuant to the terms of AT&T's disability plan, an AT&T employee's employment ends after fifty-two weeks of sickness disability benefits are paid and that there is no guarantee of reinstatement.  AT&T reasoned that because Plain was terminated on May 23, 2001, which is when her sickness disability benefits were exhausted, it was under no obligation to reinstate her.

## II.  ANALYSIS

Plain asserts two claims against MetLife: (1) a breach of fiduciary duty and a violation of ERISA arising out of MetLife's denial of LTD benefits; and (2) interference with protected rights in violation of Section 510 of ERISA, 29 U.S.C. § 1140.  MetLife has moved for summary judgment with respect to both of these claims.[2]

In addition, Plain brings a hybrid Section 301 claim against AT&T in which she alleges that AT&T breached its collective bargaining agreement by terminating her employment and

---

[2]  Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the movant is entitled to judgment as a matter of law.  Facts "that might affect the outcome of the suit under the governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The non-movant's evidence must be of a nature "that would permit a reasonable jury to find" in its favor.  *Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  Evidence that is "merely colorable" or "not significantly probative," is not sufficient to sustain a grant of summary judgment.  *Anderson*, 477 U.S. at 249-50.

rejecting her request for reinstatement, as well as alleging that her union breached its duty of fair representation when it inadequately prosecuted her grievance.  AT&T moves for judgment on the pleadings with respect to this claim.

## A.  MetLife's Denial of LTD Benefits

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court established that claims brought under ERISA challenging the denial of insurance benefits are "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case review is for abuse of discretion.  489 U.S. 101, 115 (1989).  In the instant case, neither side disputes that the employee benefit plan at issue confers discretion on MetLife in determining eligibility.  *See* Record ("R.") 441, 444, 466, 469.  As a result, the question that remains is whether MetLife's denial of LTD benefits was an abuse of discretion.  *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992) ("The essential inquiry here, in short, is what the district court understood it to be: Did the [plan administrator] reasonably construe and apply [the company's] plan in [plaintiff's] case?").

MetLife provided Plain with two bases for its decision to deny her claim for LTD benefits: (1) her claim was untimely and (2) she failed to provide sufficient medical documentation that she was disabled as defined by the plan.  *See* R. 299–300.  MetLife continues to assert that both of these proffered reasons were reasonable bases to deny Plain's claim for LTD benefits.

Addressing the first reason for the denial of the claim—Plain's allegedly untimely filing of her claim—the court finds that MetLife did not abuse its discretion when it concluded that,

5

because Plain's application for LTD's benefits was not filed within ninety-days of the expiration of her sickness disability benefits, her application was untimely. The policy governing eligibility for LTD benefits makes clear that failure to timely submit an application may result in ineligibility.[3] Similarly, the date on Plain's application for LTD benefits is clear—January 5, 2002, R. 74, approximately five months after Plain's sickness disability benefits expired on May 23, 2001, and two months after the 90-day application deadline passed.

Nevertheless, there is some evidence in the record that suggests that Plain believed that her delayed application was justified by circumstances beyond her control. For example, in her letter appealing MetLife's initial rejection of her LTD benefits claim, Plain notes that she was surprised that she was asked to apply for LTD benefits when "the doctors who were asked to complete a medical report . . . did not have the opinion that I would need to be placed on long term disability." R. 63 (Letter to MetLife dated May 10, 2002). In addition, Plain asserts that prior to the passage of the deadline she contacted MetLife because she was unsure of how she could complete the application, particularly in light of the fact that she did not have insurance to pay for a consultation with a doctor. *Id.*

MetLife responded to Plain's appeal on June 28, 2002, and found that Plain had not provided "a valid reason for the delay in applying for Long Term Disability benefits." R. 69. Given that MetLife's LTD policy does not enumerate any exceptions to the ninety-day filing requirement, the court sees no reason why MetLife's rejection of these excuses for late filing was

_____

[3] MetLife's LTD Plan description states, "You must apply for benefits within 90 days of when your sickness disability benefits under the SADBP [Sickness and Accident Disability Benefit Plan] expire. If you do not apply within 90 days following the last day of your sickness disability benefits, your case may be determined to be inactive. This may result in a permanent denial of benefits under the LTD Plan." R. 444, 469.

unjustified.  Stated simply, it is uncontroverted on the record that Plain's application was not

filed within the time allotted by the policy, and accordingly, MetLife acted reasonably in denying

the application.  *See Hungelmann v. Metropolitan Life Ins., Co.*, 2004 WL 828390, at *2 (D.

Minn. Apr. 8, 2004) (concluding that defendant's decision to deny claim for disability benefits

because it was untimely was reasonable); *Hunter v. Lockheed Martin, Corp.*, 2002 WL 1492137,

at *4 (N.D. Cal. June 7, 2002) (finding that plaintiff's claim for disability retirement benefits was

properly denied because the application was untimely).

Turning to the second reason MetLife provided for the denial of Plain's claim—that Plain

was not "disabled" as defined by the policy[4]— the court again finds that the record supports

MetLife's determination.  As MetLife argues in its motion, Plain made numerous concessions

that she was capable of returning to work.  In fact, Plain acknowledges in her letter appealing the

denial of LTD benefits that "the doctors who were asked to complete a medical report . . . did not

have the opinion that I would need to be placed on long term disability."  R. 63.  In the same

letter, Plain also notes that "my doctor has repeatedly stated that I should be able to return to

work since November 2000."  R. 64.  Moreover, Plain's application for LTD benefits states

---

[4]  For purposes of LTD benefits, MetLife defines "disability" as follows:
"Disability" or "Disabled" means that, due to an non-occupational Injury or Sickness,
you require the regular care and attendance of a Doctor and:
1. you are unable to perform each of the material duties of any gainful work or
service for which you are reasonably qualified taking into consideration your training,
education and experience
2. you, while unable to perform all of the material duties of any gainful work or
service for which you are reasonably qualified, on a full-time basis, are:
a. performing at least one of the material duties of any gainful work or service on a
part-time or full-time basis; and
b. earning currently at least 50% less per month than your Indexed Basic Monthly
Earnings due to same Injury or Sickness
R. 299, (Letter dated April 1, 2002).

7

unequivocally that Plain was able to work eight hours per day, and that the she had been advised to return to full-time service in her regular occupation.[5]  R. 77 (Application for LTD Benefits). Thus, even if Plain were to have complied with the timeline for filing a LTD benefits application, MetLife would not have abused its discretion had it denied Plain's application for the independent reason that Plain had not demonstrated that she was "disabled."

Based on the foregoing analysis, the court grants summary judgment in MetLife's favor with respect to Plain's claim for breach of fiduciary duty.

## B.  MetLife's Interference with Protected Rights

In addition to her claim for breach of fiduciary duty, Plain maintains that MetLife interfered with her protected rights in violation of Section 510 of ERISA when it played a role in AT&T's termination of her employment and subsequent failure to reinstate her.  MetLife contests these allegations, arguing that summary judgment should be entered in its favor for a variety of reasons.

The primary basis for summary judgment upon which MetLife relies is that Plain's claim is untimely.  By order dated January 7, 2005, this court ruled previously that Count VI was barred by the applicable two-year statute of limitation.[6]  *Plain v. AT&T*, Civ. No. 02-2549, at 11 (D.D.C.

---

[5]  Plain argues that MetLife's denial of LTD benefits is undermined by the report of Dr. Robert D. Frieman, an independent medical examiner, which states "I do not feel that [Plain] can sustain full time employment.  I feel that she is disabled but that she can improve with appropriate treatment."  R. 325.  This lone report, however, does not negate the reasonableness of MetLife's decision.  Under the deferential standard of review we must apply, a single piece of contradictory evidence does not render MetLife's determination unreasonable.

[6]  After a lengthy analysis, this court concluded that New York law supplied the applicable statute of limitations.  In addition, the court held that "the applicable period of limitations for a § 510 claim is 'borrowed from the most analogous state-law claim, section 120 of the New York Workers Compensation law,' *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d

Jan. 7, 2005).  In so deciding, the court ruled that Plain's claim accrued on October 5, 2000, the

date she was terminated by AT&T for failing to return to work after being informed that she was

no longer medically certified for sickness disability leave.  *Id.*  While the January 7, 2005 order

was applicable only to MetLife's co-defendant—AT&T—the court sees no reason to revisit its

previous holding,[7] nor any reason why the claim against MetLife should be treated differently

than Plain's claim against AT&T.

Even if the court were to conclude that the statute of limitations did not bar Plain's claim,

the court would nevertheless find that MetLife's is entitled to summary judgment.  In order for a

plaintiff to prevail on a claim under Section 510, the plaintiff must demonstrate that the

defendant interfered with a right "to which he is entitled under the provisions of the employee

benefit plan."[8]  19 U.S.C. § 510; *see also Blake v. H-2A & H-2B Voluntary Employees'*

---

331, 332 (2d Cir. 1997), which is two years."  *Plain v. AT&T*, Civ. No. 02-2549, at 10 (D.D.C. Jan. 7, 2005).

[7] The court notes that Plain moved to reconsider the court's January 7, 2005 order.  In her motion Plain argued, as she does now, that her ERISA claim for interference with her protected rights accrued on June 12, 2001, the day she learned that her sickness disability appeal had been decided favorably, not October 5, 2000, the date she was terminated.  This court rejected that argument in an order dated September 29, 2005.  *See Plain v. AT&T*, Civ. No. 02-02549 (D.D.C. Sept. 29, 2005).  It is October 5, 2000, when Plain was terminated, not June 12, 2001.  While the technical date of Plain's termination was changed on June 12, 2001, to May 23, 2001, this was to accommodate an extension of her sickness disability benefits but never altered her employment status.

[8] Section 510 provides in pertinent part as follows:
It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.
29 U.S.C. § 1140.

*Beneficiary Ass'n*, 952 F. Supp. 927, 934–35 (D. Conn. 1997).  In the instant case, the court has

concluded that Plain had no right to LTD benefits.  *See supra* II(A).  As such, there is no

"protected right" with which MetLife could have interfered.

Moreover, though the court does not agree with MetLife's contention that a non-employer

is entirely immune from liability under Section 510,[9] in order for a insurer to be liable under

Section 510, a plaintiff must demonstrate that the insurer "coerce[d] an employer to fire an

employee," *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992), and

must allege "more than the mere denial of a claim," *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410,

422 (4th Cir. 1993); *Blake*, 952 F. Supp. at 934–35, to establish that an insurer interfered with a

protected right.  The record simply does not support such an inference.

While Plain makes much of the extensive communication between AT&T & MetLife

during the period before her termination, Pl.'s Stmt. of Facts ¶ 1, the substance of the

communication is inconsistent with an allegation of coercion.  The mere existence of

communication is not dispositive, particularly where "the communications between the parties

are rational and entirely responsive to the existing coverage problems."  *See Custer*, 12 F.3d at

---

[9]  While some courts have found that a non-employer may not be liable under Section
510, *see, e.g., Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992), this court is
persuaded by the reasoning of those courts that have held that non-employer liability is permitted
by Section 510, s*ee, e.g. Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir.
1992); *Custer v. Pan Am. Life Ins., Co.*, 12 F.3d 410, 421 (4th Cir. 1993).  As the court stated in
*Custer*:

> 29 U.S.C. § 1140 [Section 510] states that the proscribed actions are unlawful "for
> any *person*."  Since both terms, "employer" and "person," are defined by ERISA . .
> . we must assume that Congress used the term "person" deliberately.  Although the
> verbs used in § 1140 , such as "discharge," "suspend," or "discipline," may suggest
> action by an *employer*, Congress also used broader verbs such as "discriminate," and
> the much broader term "person," in stating by whom such actions would be illegal.

12 F.3d at 421.

421.  The portion of the record to which Plain refers the court—pages 41 to 45—consists of notes

related to the lack of medical certification for Plain's absence from work after August 15, 2000,

but does not raise a genuine issue of fact with respect to the existence of coercion.

Furthermore, other portions of the record evidence a lack of coordination between

MetLife and AT&T with respect to Plain's termination on October 2, 2000.  As Plain notes in her

opposition, Pl.'s Opp'n at 4, MetLife provided Plain until October 12, 2000 to submit

documentation which supported her claim of sickness disability, R. 214 (Letter from MetLife to

Plain, dated September 29, 2000), while AT&T concluded that Plain would be terminated if she

did not produce medical documentation by September 22, 2000, or report to work by October 2,

2000.  This inconsistency belies any claim of coercion on MetLife's behalf.  As such, the court

grants MetLife's motion for summary judgment.

## C.  Plain's Breach of Contract Claim against AT&T

The court next addresses Plain's remaining claims asserted against AT&T.  In Count IV

of her complaint, Plain alleges that AT&T breached the terms of its collective bargaining

agreement with her Union when:

> The Defendant terminated the Plaintiff contrary to the terms of the collective
> bargaining agreement when it initially terminated the Plaintiff in October 2000 while
> Plaintiff's application for disability was pending and subsequently when it changed
> the date of termination and reason of termination without notice to the Plaintiff.
> Termination of the Plaintiff or failing to reinstate the Plaintiff after short-term
> disability period contravenes the collective bargaining agreement.

Pl.'s Second Am. Compl. ¶ 30.

As an initial matter, AT&T questions whether this count encompasses a single claim

based on AT&T's wrongful termination of Plain in October of 2000, or whether it in fact

11

encompasses two claims, one rooted in plaintiff's termination on October 2000, and a second arising from AT&T's failure to reinstate Plain after AT&T changed the official date of Plain's termination on June 12, 2001.

The significance of the distinction is not inconsequential.  If Plain does indeed raise two separate claims, then the application of the statute of limitations will differ for each claim. Similarly, if two distinct claims are made, then Plain must exhaust her contractual remedies with respect to both her termination and her failure to be reinstated.

Upon examination of Plain's second amended complaint, the court concludes that Plain alleges two separate violations of the collective bargaining agreement.  As AT&T notes, a plain-reading of Plain's complaint indicates that Plain relies on two theories of liability.  Plain alleges that AT&T violated the terms of the collective bargaining agreement when it "initially terminated [Plain]. . . *and* subsequently when it changed the date of termination and reason of termination without notice to the Plaintiff."  *Id.* (emphasis added).  Similarly, Plain asserts that "[t]ermination of the Plaintiff *or* failing to reinstate the Plaintiff after short-term disability period contravenes the collective bargaining agreement."  *Id.* (emphasis added).  Thus, Plain's own formulation of her claim contemplates two distinct acts in contravention of the terms of the collective bargaining agreement.

The court's decision is bolstered by the different policies and factual underpinnings implicated by Plain's termination and failure to be reinstated.  AT&T terminated Plain in October 2000 because she did not report to work by the date which AT&T provided and because AT&T believed Plain was unable to substantiate her claim for sickness disability benefits.  By contrast, AT&T's proffered justification for its failure to reinstate Plain was premised on a reversal of that

12

very same position—that is, AT&T subsequently decided that Plain was entitled to complete

benefits under the company's sickness disability policy.  When AT&T indicated that Plain would

not be reinstated, it was because employees that exhaust sickness disability benefits are not

entitled to reinstatement.[10]

Having answered this threshold question, the court proceeds to AT&T's specific

arguments in favor of judgment on the pleadings.[11]

### 1. Statute of Limitations and Plain's "Termination" Claim

AT&T argues that Plain's termination claim is time-barred by the statute of

limitations—in this case, a six-month limitations period applicable to Section 301 claims arising

under the Labor Management Relations Act.  *DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151,

168–69 (1983); *Simmons v. Howard Univ.*, 157 F.3d 914, 916 (D.C. Cir. 1998).  It is well-

established that a claim accrues under Section 301 when "the claimant discovers, or in the

exercise or reasonable diligence should have discovered, the acts constituting the alleged

---

[10]  Additionally, the court notes that there is support in the caselaw, albeit in a different context, for treating termination claims and failure to reinstate claims as distinct causes of action. *See Castaneda v. East Otero Sch. Dist.*, 2005 WL 3280240, at *6–8 (D. Colo. Dec. 1, 2005) (finding that, under Title VII, two denied requests for reinstatement were each "discrete incidents"); *Pyles v. Frank*, 1991 WL 2212, at *5–6 (D. Md. Jan. 4, 1991) (noting that "any claim of discriminatory termination was separate and distinct from [plaintiff's] reinstatement claim, and would form the basis for a new administrative complaint.").

[11]  The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(c) is substantially the same as under Fed. R. Civ. P. 12(b)(6).  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  An order of dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  Further, a court must construe a plaintiff's complaint liberally in her favor, giving her "the benefit of all favorable inferences that can be drawn from the alleged facts."  *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

violation." *Simmons*, 157 F.3d at 916; *see also Lucas v. Mountain States Tel. & Tel.*, 909 F.2d

419, 421 (10th Cir. 1990).  Notwithstanding this default rule, the statute of limitations for a

Section 301 claim may be tolled "when the plaintiff is fraudulently induced to delay filing his

suit, or in good faith attempts to exhaust grievance procedures."  *Simmons*, 157 F.3d at 917.

 In the instant case, AT&T terminated Plain on October 5, 2000.  Second Am. Compl. ¶

10.  Plain did not file her initial complaint until December 31, 2002, almost two years after the

date of termination. Therefore, a straightforward application of the statue of limitations would

bar Plain's termination claim.  However, under the "good faith attempt" prong of the *Simmons*

tolling standard, there is a persuasive argument that the statute of limitations was tolled during

the pendency of Plain's termination-related grievance procedures.  Nonetheless, any tolling

period concluded after the Union failed to select an arbitrator during the time provided by the

collective bargaining agreement—September 29, 2001.[12]  *See Watkins v. Commc'n Workers of*

*Am., Local 2336*, 736 F. Supp. 1156, 1159 (D.D.C. 1990) (finding timeliness of Section 301

claim is measured from "when the employee knows or should have know of the last action taken

by the union which constituted the alleged breach of its duty of fair representation.").  According

---

 [12]  The court notes that a union does not breach its duty of fair representation merely
because it does not process every grievance to the final step of grievance or arbitration
procedures.  *See Vaca*, 386 U.S. at 191–93 (affirming that it is within a union's discretion to
refuse to submit an employee's claim to the final step of arbitration because it believed it lacked
merit to justify the expense involved); *Lewis v. Greyhound Lines-East*, 555 F.2d 1053, 1055
(D.C. Cir. 1977)  ("[a union] possesses discretion to pursue only those grievances it fairly
considers to be meritorious"); *see also Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d
Cir. 1970) ("an employee... is subject to the union's discretionary power to settle or even to
abandon a grievance, so long as it does not act arbitrarily, and this is true even if it can later be
demonstrated that the employee's claim was meritorious.").  Providing discretion to unions
allows frivolous grievances to end prior to the most costly and time consuming step in the
grievance process; and, if such discretion was not given to a union, the grievance process and
arbitration would be overburdened.  *Vaca*, 386 U.S. at 191-92.

to the express terms of the collective bargaining agreement, when the Union failed to select an arbitrator the contractual grievance proceedings were complete.[13]  Accordingly, Plain should have been aware that the grievance process was completed, and as such, that she had six months from September 29, 2002—that is, until March 29, 2002—to file her complaint.  Again, she did not file her complaint until December 31, 2002.  Therefore, unless AT&T or the Union's actions "fraudulently induced" Plain "to delay filing [her] suit," *Simmons*, 157 F.3d at 918 (citing *Lucas*, 909 F.2d at 421–22), Plain's claim is time-barred.

Plain further argues that she should not be expected to have known that arbitration had been abandoned because, contrary to the procedures set forth in the collective bargaining agreement, the sickness disability grievance process took more than ten months to complete. Pl.'s Opp'n at 9.  In essence, Plain argues that she was lulled into inaction by the union's prior course of action.  As a result, she contends that "the six-month statute of limitations ought to commence when Plaintiff was formally notified *by the Union* that arbitration would be terminated after filing an appeal and/or requesting arbitration."  *Id.* at 10 (emphasis added).

---

[13]Under the terms of the collective bargaining agreement,

> If within sixty (60) calendar days following the date of the Company's receipt of the notice of election to arbitrate, no arbitrator has been mutually agreed upon according to the procedures set forth herein, and within one hundred twenty (120) calendar days following the notice of election to arbitrate no application has been made to the American Arbitration Association . . . then, absent mutual extension of time agreement signed by the Union and the Company, such grievance and the election to arbitrate will be considered closed and the grievance shall not be arbitrable.

Def.'s Mot. to Dismiss, Ex. 1.

This argument is flawed for several reasons, the primary being that union members are not entitled to notice from their union that their grievances have been rejected or abandoned. *See Albright v. Virtue*, 273 F.3d 564, 566 (3d Cir. 2001) ("[w]e have not required that union members who wish to file suit against the union or their employers be given explicit notice that their grievances have been rejected"); *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir. 1983) ("[T]he appellant cannot be allowed to sit back and claim a lack of notice in light of circumstances" where seven months of union inactivity preceded the six-month statutory period).

Furthermore, to this day Plain does not contend that the Union has provided her with formal notification that the arbitration had been terminated after filing her appeal, only that AT&T has provided formal notification. Second Am. Compl. ¶ 17. Under Plain's proposed standard requiring formal notice from the Union, the statute of limitations would continue to toll—more than four years after the initial appeal was filed on June 1, 2001. Such a result would run counter to federal labor policy, which emphasizes the rapid final resolution of labor disputes. *See, e.g., United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 63–64 (1981).

Finally, although Plain alleges that the Union "concealed" information from her that prevented her from pursuing her claim, Second. Am. Compl. ¶ 16, she does not allege any *affirmative* misconduct that would support a "fraudulent inducement" claim. *See Simmons*, 157 F.3d at 917 (citing *Demchick*, 821 F.2d at 105); *Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 97–98 (D.D.C. 2005) (refusing to apply equitable tolling to plaintiff's Section 301 claim where plaintiff did not "allege any misleading action by [defendant] preventing him from filing suit."), *c.f. King v. New York Tel. Co.*, 785 F.2d 31, 34 (2d Cir.1986) (finding tolling applicable where union actively represented to plaintiff that it could still

16

successfully demand arbitration despite passage of filing period).  Instead, Plain's only factual allegation that speaks to a possible "fraudulent inducement" claim against the Union is its failure to provide notice to her that it failed to choose an arbitrator, an obligation the union did not bear.  As a result, Plain's factual allegations fail to support a claim that the Union's actions toll the statute of limitations.

Similarly, Plain fails to allege any conduct on AT&T's behalf that would support a "fraudulent inducement" claim.  Although Plain contends that AT&T advised her that it would review her case in November 2001, Second Am. Compl. ¶ 14, she does not allege that she received any other positive indication from either the Union or AT&T after November 2001 that indicated her termination appeal remained open or was being pursued by either party.  The mere fact that Plain may have continued to request reinstatement after this date does not alter the analysis.  "If repeated requests to a union to institute a grievance were to perpetually toll the statute of limitations, despite the employee's belief that such requests were futile, the statutory time bar would be illusory."  *Vadino*, 903 F.2d at 262–63.[14]

The court finds no merit to Plain's arguments against the application of the statute of limitations, and therefore grants AT&T motion for judgment on the pleadings with respect to Plain's termination claims.

### 2.  Plain's "Reinstatement" Claim & Exhaustion of Contractual Remedies

Finally, the court examines Plain's claim arising from AT&T's failure to reinstate her

---

[14]  Even if the court accepts that AT&T's November 2001 representation constituted fraudulent inducement which delayed Plain from filing her suit, Plain's claim would still be time-barred as the modified statute of limitations would have expired on May 29, 2001.

following her dismissal.  AT&T urges that this claim must be dismissed because Plain failed to exhaust her contractual remedies.

As a general rule, an employee-plaintiff who is subject to a collective bargaining agreement must seek to resolve their contract disputes under the agreement's grievance and arbitration procedures before he or she can maintain a suit against his or her union or employer.[15] *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965); *Commc'n Workers of Am. v. AT&T*, 40 F.2d 426, 434 (D.C. Cir. 1994).  However, when it is shown that the union has breached its duty of fair representation, any failure by the union to exhaust the procedures does not bar an employee's lawsuit.  *DelCostello*, 462 at 164.

In a Section 301 claim, "employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."  *United Parcel Serv.*, 451 U.S. at 67 (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570-71 (1976)); *Coble v. Howard Univ.*, 960 F. Supp. 1, 3 (D.D.C. 1997). A breach of the duty of fair representation occurs when a union's conduct toward a union member is "arbitrary, discriminatory or in bad faith."  *Vaca*, 386 U.S. at 190; *Abrams v. Commc'n Workers of Am.*, 59 F.3d 1373, 1377 (D.C. Cir. 1995).  A union's actions are arbitrary only if they are "so far outside a wide range of reasonableness as to be wholly 'irrational.'" *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7 (D.D.C. 1997).

---

[15]  An employee is entitled to pursue a claim against only the employer, and not the union, while arguing breach of union's duty of fair representation as an excuse for his or her failure to exhaust administrative remedies.  *DelCostello*, 462 U.S. at 165 ("The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

In this case, Plain has failed to carry her burden.  While Plain argues that the Union's breach of its duty of fair representation excuses her from exhausting her contractual remedies, Plain's argument relies only on actions directly related to her termination grievance and appeal, not her reinstatement claim.  Specifically, she notes that:

> [p]laintiff initiated grievance procedures for her termination on October 2, 2000 for which an appeal was filed on June 1, 2001.  The Plaintiff was not notified by AT&T of any attempt made by it to appoint a mutually agreeable arbitrator from the list of arbitrators nor did it notify Plaintiff that she needed to put forward names of arbitrator for the arbitration to proceed.  Similarly, the Union did not notify Plaintiff that it would not proceed with the arbitration/appeal and Article 10 of the collective bargaining agreement dealing with arbitration only provides for the Union to initiate and participate in arbitration procedures.

Pl.'s Opp'n 12.  The issue of whether Plain exhausted her contractual remedies concerning her termination grievance or whether the Union breached its duty of fair representation in its handling of Plain's termination grievance are not before the court at this time.  Instead, the court's exhaustion of contractual remedies inquiry concerns only her reinstatement claim.

Nowhere in the pleadings is there an indication that Plain or the Union filed a separate grievance concerning her reinstatement.  Although she states that she "sought the Union's assistance in pursuing her reinstatement," Second. Am. Compl. ¶ 14, she does not suggest that the Union misled her into believing that it filed a separate grievance on her behalf.  As such, Plain is barred from raising a violation of the collective bargaining agreement related to her reinstatement because she has not sought to resolve the dispute under the grievance procedure set forth in the collective bargaining agreement.  *Republic Steel Corp.*, 379 U.S. at 652.

## II. CONCLUSION

For the aforementioned reasons, it is this 24th day of March, 2006, hereby

**ORDERED** that AT&T's motion for judgment on the pleadings (Dkt. #59) is **GRANTED** and

MetLife's motion for summary judgment (Dkt. #61) is **GRANTED**.  An appropriate order

accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge
